Steven A. Alpert
Nevada Bar # 8353
PRICE LAW GROUP, APC
5940 S Rainbow Blvd
Las Vegas, NV 89118
T: (866) 881‑2133
F: (866) 401-1457
E: alpert@pricelawgroup.com
*Attorneys for Plaintiff,*
*Charles Near*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| CHARLES NEAR,<br>　　　　　Plaintiff<br><br>v.<br><br>USAA SAVINGS BANK,<br>　　　　　Defendant. | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL FOR VIOLATIONS OF:**<br>　1. Telephone Consumer Protection Act, 47 U.S.C. §227<br>　2. Invasion of Privacy- Intrusion Upon Seclusion |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Charles Near ("Charles"), by and through his attorneys, alleges the following against Defendant USAA Savings Bank ("USAA"):

**INTRODUCTION**

1. Count I of Charles's Complaint against USAA is based upon the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227. The TCPA is a federal statute that broadly regulates the use of automated telephone equipment. Among other things, the TCPA prohibits certain unsolicited marketing calls, restricts the use of automatic dialers or prerecorded messages, and delegates rulemaking authority to the Federal Communications Commission ("FCC").

2. Count II of Charles's Complaint against USAA is based upon the Invasion of Privacy - Intrusion upon Seclusion, as derived from §652B of the Restatement (Second) of Torts and as adapted by the state of Nevada. §652B prohibits an intentional intrusion,

"physically or otherwise, upon the solitude or seclusion of another or her private affairs or concerns . . . that would be highly offensive to a reasonable person."

## PARTIES

3. Charles is a natural person residing in Alabama.

4. USAA is a bank with its principal place of business located at 3773 Howard Hughes Parkway, #190n, Las Vegas, NV 89109. USAA can be served with process through its registered agent Corporation Service Company located at 112 North Curry Street, Carson City, NV, 89703.

5. USAA acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## JURISDICTION

6. Jurisdiction of this court arises under 47 U.S.C. §227, and 28 U.S.C. §§1331, 1332, 1367.

7. Diversity jurisdiction is established under 28 U.S.C. §1332 as the matter in controversy exceeds $75,000.00, Charles is a citizen of Alabama, and USAA is a citizen of Nevada.

8. Venue is proper pursuant to 28 U.S.C. §1391(b)(1) because USAA resides in this District.

9. USAA is domiciled in Nevada; therefore, personal jurisdiction is established.

## FACTUAL ALLEGATIONS

10. In or around January 2020, USAA began a campaign in which it placed hundreds of telephone calls to Charles's cellular phone without his consent, using an automatic telephone dialing system and/or prerecorded or artificial voices.

11. The calls originated from (800) 531-8722.

12. Upon information and belief, this telephone number is owned, operated or controlled by USAA or its agent(s).

13. On or about January 9, 2020, at approximately 11:41 am, Charles answered a

call from USAA and spoke with a representative.

14. After picking up the call, Charles noticed an unusually long delay and a series of clicks, beeps or tones before the representative began speaking, consistent with the use of an automatic dialing system.

15. The representative informed Charles that USAA was attempting to collect an alleged debt.

16. Charles instructed the representative to stop calling him and instead to communicate with him by mail only.

17. Charles also explained he did not have money to repay the alleged debt and was experiencing serious financial difficulties: he is an elderly man living on a fixed income and when he fell behind the interest rates on the debt were so high that he could not catch up with them.

18. Despite Charles expressly instructing USAA not to call him but to communicate with him by mail only, and that he could not pay at the time, USAA began a harassment campaign by calling Charles on his cellular phone relentlessly for months, including on the weekends.

19. On or about March 13, 2020, a state of public health emergency was declared in Alabama.

20. On or about March 29, 2020, tired of the calls and desperate to get them to stop, Charles answered another call from USAA and spoke with a representative.

21. Charles, for the second time, told the representative to please stop calling him and that he could not make a payment.

22. Charles's second request was ignored by USAA.

23. On or about May 6, 2020, Charles answered another of USAA's calls and, <u>for the third time</u>, requested that the calls stop.

24. The calls did not stop or reduce in frequency.

25. Between January 9, 2020 and May 27, 2020, USAA called Charles on his cellular telephone no less than **THREE HUNDRED AND THIRTY-FOUR TIMES**

**(334)**, after Charles first requested that the calls stop.

26. USAA called Charles almost every day and.

27. USAA called Charles multiple times a day, up to seven (7) times in a single day.

28. USAA called Charles at all times during the day.

29. USAA called Charles beginning early in the morning at 8am, and would continue to call throughout the day until late in the evening, at 8pm.

30. USAA continued calling after Charles revoked consent a second time (approximately 140 times) and a third time (approximately 50 times).

31. Upon information and belief, USAA called or attempted to call and text Charles's friends and family with the intention that they would communicate to Charles that USAA was attempting to collect a debt from him, causing Charles additional embarrassment and distress.

32. Upon information and belief, USAA called Charles and delivered prerecorded or artificial voice messages.

33. Upon information and belief, USAA's automatic dialer failed to return to the on-hook state within 60 seconds of completion of dialing.

34.

35. USAA's intrusion upon Charles's seclusion would be highly offensive to the reasonable person. The conduct was also oppressive, outrageous, and exceeded reasonable collection efforts.

36. USAA's conduct was especially unreasonable because it called relentlessly shortly after Charles had explained the reason why he did not have money to repay USAA and expressly revoked consent to be called three times.

37. USAA's conduct was not only willful but was done with the intention of causing Charles such distress, so as to induce him to pay the debt or pay more than he was able to. USAA knew or should have known that Charles is frail and elderly, and the number of calls disturbed him immensely.

38. USAA is familiar with the TCPA.

39. Each and every one of USAA's telephone calls caused Charles distraction and temporary loss of use of his telephone line.

40. Charles is frail and elderly and therefore regularly visits his doctors.

41. USAA's debt collection has caused him endless frustration and stress that is amplified every time he receives another unwanted phone call.

42. Further, as a result of USAA's conduct, Charles has sustained actual damages including but not limited to, stress, anxiety, embarrassment, anguish, trouble sleeping, severe emotional and mental pain.

## COUNT I

### Violations of the TCPA, 47 U.S.C. §227

43. Charles incorporates by reference the foregoing paragraphs as fully stated herein.

44. USAA violated the TCPA. USAA's violations include, but are not limited to the following:

   a. Within four years prior to the filing of this action, on multiple occasions, USAA violated the TCPA, 47 U.S.C. §227 (b)(1)(A)(iii), which states in pertinent part, "It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice — to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call.

   b. Within four years prior to the filing of this action, on multiple occasions, USAA willfully and/or knowingly contacted Charles on his cellular telephone using an artificial prerecorded voice or an automatic telephone dialing system and as such, USAA knowing and/or willfully violated the TCPA. §227 (b)(1)(B).

45. As a result of USAA's violations of 47 U.S.C. §227, Charles is entitled to declaratory judgment that USAA's conduct violated the TCPA, and an award of five hundred dollars ($500.00) in statutory damages, for each and every violation, pursuant to 47 U.S.C. §227(b)(3)(B). If the Court finds that USAA knowingly and/or willfully violated the TCPA, Charles is entitled to an award of one thousand five hundred dollars ($1,500.00), for each and every violation pursuant to 47 U.S.C. §227(b)(3)(B) and 47 U.S.C. §227(b)(3)(C).

## COUNT II

### Violation of Invasion of Privacy — Intrusion Upon Seclusion

46. Charles incorporates by reference the foregoing paragraphs as fully stated herein.

47. Restatement of the Law, Second, Torts, §652B, as adopted by Nevada, defines intrusion upon seclusion as, "[o]ne who intentionally intrudes . . . upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person."

48. USAA violated Charles's privacy. USAA's violations include, but are not limited to, the following:

   a. USAA intentionally intruded, physically or otherwise, upon Charles's solitude and seclusion by engaging in harassing phone calls in an attempt to collect on an alleged debt despite a request(s) for the calls to cease.

   b. The number and frequency of the telephone calls to Charles by USAA after a request(s) for the calls to cease constitute an intrusion on Charles's privacy and solitude.

   c. USAA's conduct would be highly offensive to a reasonable person as David received calls that often interrupted and occupied his phone line.

   d. The frequency and volume of USAA's calls were harassing to Charles.

   e. USAA's acts, as described above, were done intentionally with the purpose of coercing Charles to pay the alleged debt.

1  49. As a result of USAA's violations of Charles's privacy, USAA is liable to Charles for actual damages. If the Court finds that the conduct is found to be egregious, Charles may recover punitive damages.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Charles hereby demands a trial by jury of all issues triable by jury.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff Charles Near respectfully requests judgment be entered against Defendant USAA Savings Bank for the following:

A. Declaratory judgment that USAA violated the TCPA;

B. Statutory damages of $500.00 for each and every negligent violation of the TCPA pursuant to 47 U.S.C. §227(b)(3)(B);

C. Statutory damages of $1500.00 for each and every knowing and/or willful violation of the TCPA pursuant to 47 U.S.C. §227(b)(3)(B) and 47 U.S.C. §227(b)(3)(C);

D. Actual and punitive damages for USAA's intrusion upon Charles's seclusion;

E. Awarding Charles any pre-judgment and post-judgment interest as may be allowed under the law; and

F. Any other relief that this Honorable Court deems appropriate.

Respectfully submitted this 8th day of June 2020.

By:/s/ *Steven A. Alpert*
Steven A. Alpert, NV Bar # 8353
PRICE LAW GROUP, APC
5940 S Rainbow Blvd
Las Vegas, NV 89118
T: (866) 881-2133
F: (866) 401-1457
E: alpert@pricelawgroup.com
*Attorneys for Plaintiff,*
*Charles Near*